UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM DWIGHT DOTSON | ) | CASE NO. 1:04 CV 2281 |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE LESLEY WELLS |
| | ) | |
| -vs- | ) | |
| | ) | |
| REGINALD A. WILKINSON, et al. | ) | |
| | ) | |
| Defendants | ) | MEMORANDUM OF OPINION AND |
| | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION TO DISMISS |

Plaintiff William Dwight Dotson ("Dotson"), an inmate at the Richland Correctional Institution ("RCI") in Mansfield, Ohio, filed this action pro se against the following officials of the State of Ohio: Reginald Wilkinson ("Mr. Wilkinson"), Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Brian Cain ("Mr. Cain" or "Nurse Cain"), a registered nurse and Health Care Administrator at RCI; and, Dr. Bruce Martin ("Dr. Martin"), Medical Director of ODRC during the applicable time period, both in his official and individual capacity.  (Docket No. 12).  Mr. Dotson tested positive for Hepatitis C and, with regard to that diagnosis, he maintains the defendants intentionally withheld medical advice and information, intentionally delayed or refused adequate medical treatment, and otherwise acted negligently in treating his condition.  Mr. Dotson

brings this suit pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth, Fifth,

Sixth, Eighth and Fourteenth Amendments of the United States Constitution, and levels

additional state tort claims of conspiracy, medical malpractice, negligence and gross

negligence.[1]  The plaintiff seeks $1,000,000 in compensatory damages and $5,000,000

in punitive damages.

The Court has before it defendants' motion to dismiss, pursuant to Fed. R. Civ.

P. 12(b)(6), to which Mr. Dotson filed an opposition (Docket No. 13).  The Court granted

Mr. Dotson's motion (Docket No. 10) for leave to provide proof of administrative

exhaustion and to submit an amended complaint.  (Docket No. 12).[2]

For the reasons discussed below, the defendants' motion to dismiss will be

granted and Mr. Dotson's claim will be dismissed with prejudice.

---

[1]The Court will review Mr. Dotson's action as it pertains to his invocation of the Eighth Amendment and the Court's construal of the plaintiff's brief invocation of the Fourteenth Amendment.  Mr. Dotson provides absolutely no basis upon which to proceed in evaluating his claims pursuant to the Fourth and Sixth Amendments of the United States Constitution.  As such, the Court will dismiss his Section 1983 claim as it pertains to those two Amendments.

The Fifth Amendment states, in material part, that "No person shall ... be deprived of life, liberty, or property, without due process of law [.]" U.S. Const. amend. V.

The Fourteenth Amendment stipulates, in pertinent part, that "No state shall ... deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1.

The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government.  See generally Sturgell v. Creasy, 640 F.2d 843, 850 (6th Cir.1981);  Walker v. Hughes, 558 F.2d 1247, 1257 (6th Cir.1977).  As such, what the Court construes as Mr. Dotson's invocation of the Fifth Amendment Due Process Clause is a nullity, and redundant of his invocation of the Fourteenth Amendment Due Process Clause.

Finally, Mr. Dotson's concern for the "deliberate indifference" by which his condition has allegedly been addressed and his specific invocation of the Eighth Amendment in his complaint leads the Court to review his claims pursuant to the standards laid down in Estelle v. Gamble, 429 U.S. 97 (1976) for Eighth Amendment violations.

[2]Mr. Dotson's amended complaint names defendants. Wilkinson, Cain and Martin, but brings claims only against Dr. Martin.  Consequently, while, as a general proposition, an amended complaint fully supplants previous complaints, it appears that Mr. Dotson presents the amended complaint, rather as an addendum, expanding on his claims against Mr. Martin.  Accordingly, the Court will address Mr. Dotson's allegations against all three defendants as conveyed in both his initial and amended complaints.

# I.  FACTUAL BACKGROUND

Mr. Dotson has been incarcerated with ODRC since 1981.  In his initial complaint, Mr. Dotson maintains that, approximately, in March 1991 he began to experience "abdominal pain, nausea, and flu like symptoms."  (Complaint ¶ 12). According to the grievance documents, filed by Mr. Dotson, along with his amended complaint (Docket 12, Exhibit 1), the plaintiff was diagnosed with Hepatitis C on 14 November 2003.  Evidence indicates that Dr. Dennison informed the plaintiff on 19 November 2003 of the positive test and ordered further testing, diagnosis by a chronic care nurse, monitoring, and referral to a medical liver specialist.  (Exhibit 1; Complaint ¶ 68).

According to the evidence, on 21 November 2003, Dr. Dennison "educated" Mr. Dotson regarding the infection.  (Exhibit 1).  Mr. Dotson was seen on "sick call" by Nurse Lewis on 9 December 2003 and was referred to Dr. Williams who saw the plaintiff on 16 December 2003.  (Exhibit 1).  Dr. Williams discussed the plaintiff's condition and informed Mr. Dotson that he would be placed on a waiting list for treatment.

Mr. Dotson filed an informal complaint on 5 December 2003, alleging negligence and seeking "immediate medical treatment," scheduling for a liver biopsy and placement "on the chronic case load."  (Exhibit 1; Complaint ¶ 69).  Registered Nurse Cain responded to this informal complaint on 12 December 2003, assuring the plaintiff he would be placed in the Hepatitis C clinic and followed "according to screening guidelines."

Mr. Dotson elevated his informal complaint to a Notification of Grievance on 16 December 2003.  In his grievance, the plaintiff reiterates his concern for immediate

- 3 -

medical attention due to his mid-November diagnosis.  Mr. Dotson recounts reviewing

his past blood tests, which indicate elevated levels of AST and ALT, he confirms being

seen by Nurse Lewis on 9 December 2003 and Dr. Williams on 16 December 2006, at

which time he was informed by Dr. Williams that he would have to be placed on a

waiting list for treatment of his Hepatitis C.

Mr. Dotson's grievance was investigated and an Inspector's Report filed on

30 December 2003 relating the plaintiff's concerns about treatment for his Hepatitis C,

memorializing the actions taken by the Richland Correctional Medical staff, conveying

the applicable medical protocol for testing and treatment of Hepatitis C, and finally,

finding the staff in compliance with proper protocol and policy.  The Inspector

maintained he interviewed the plaintiff, Nurse Walsh in Chronic Care, Mrs. Lukowski in

Medical Records and defendant Nurse Cain.  The Inspector concluded that Mr. Dotson

had been seen routinely and was scheduled for continuing care through the Chronic

Care Clinic.

Mr. Dotson appealed the Inspector's decision on 8 January 2004.  In his appeal

he charges the "medical staff" with "deliberate indifference" in the treatment following his

Hepatitis C diagnosis.  Mr. Dotson reiterated his request for a liver biopsy and the "shots

and meds that follow."

On 16 January 2004, the Office of the Chief Inspector reviewed and affirmed the

decision of the Inspector.  After confirming Mr. Dotson's medical record and Hepatitis C

follow-up, the Assistant Chief Inspector noted:

> Neither the Institutional Inspector nor this office can diagnose, prescribe,
> or recommend any medical treatment.  Although you do not agree with the

treatment you are receiving your medical concerns are not being ignored
and are addressed by a licensed medical physician.

On 27 September 2004, Mr. Dotson again filed an Informal Complaint Resolution

with defendant Nurse Cain.  Mr. Dotson objects to what he characterizes as "the

intentional denial of medical treatment in violation of the eight[sic] amendment to the

United States Constitution."  The plaintiff notes that he has seen the doctor "on a

number of occasions complaining about stomach, kidney, joint problems, and flu like

systoms [sic], and nausea."  Mr. Dotson again requested a liver biopsy and "the

medicine that treats this virus," in addition to $5,000,000 for suffering and pain.

Defendant Nurse Cain responded in writing on 15 October 2004 to Mr. Dotson's

Informal Complaint.  Nurse Cain noted the plaintiff did not currently "meet the criteria for

treatment due to [his] high blood pressure and creatinine levels."  Nurse Cain noted he

would forward Mr. Dotson's information to Columbus for further evaluation and

treatment recommendations.  While this Informal Complaint contains the same requests

and concerns given voice in Mr. Dotson's earlier grievance the record does not indicate

whether this, 27 September 2004, Informal Complaint was ever escalated to the

grievance stage.


## II.  MOTION TO DISMISS

Defendants Wilkinson, Cain, and Martin move to dismiss Mr. Dotson's complaint

on the basis of the following arguments: (1) Mr. Dotson has failed to exhaust his

administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42

U.S.C. § 1997e(a); (2) Mr. Dotson has failed to allege any personal involvement of

- 5 -

Director Wilkinson or Dr. Martin, creating a fatal, legal infirmity in the Section 1983 suit against the two defendants; and (3) Mr. Dotson's Eighth Amendment claim against Nurse Cain does not plead the facts necessary to give rise to the necessary legal standard of deliberate indifference.

A motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), questions the sufficiency of the pleadings.  No complaint shall be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief. See Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Pfennig v. Household Credit Servs., 295 F.3d 522, 525-26 (6th Cir.2002).

When considering a 12(b)(6) motion for failure to state a claim upon which relief can be granted, a court must:

> construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. . . .  However, the Court need not accept as true legal conclusions or unwarranted factual inferences.

Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998).  The Court's task is thus "necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

While a reviewing court must liberally construe pro se pleadings, Boag v. MacDougall, 454 U.S. 364 (1982) (per curiam), a plaintiff is required to plead more than bare legal conclusions.  Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir.

- 6 -

1996);  see also Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987).

Therefore, the complaint must contain either direct or inferential allegations respecting

all the material elements to sustain a recovery under some viable legal theory.  Scheid

v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988).


### III.  SECTION 1983 CLAIM

Mr. Dotson claims that the named defendants violated his right to medical care

under the Eighth Amendment of the United States Constitution.  He brings this claim

against the three named defendants in their official and individual capacities.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the United States Constitution or laws and must show that the

deprivation was committed by a person acting under color of state law.  West v. Atkins,

487 U.S. 42, 48 (1988);  Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir.1996).

Because Section 1983 is a method for vindicating federal rights, not a source of

substantive rights itself, the first step in an action under § 1983 is to identify the specific

constitutional right allegedly infringed.  Albright v. Oliver, 510 U.S. 266, 271 (1994).  Mr.

Dotson complains that he is being refused proper medical care and treatment for a

serious physical condition – Hepatitis C.  It is well established that deliberate

indifference to a prisoner's serious medical needs constitutes the "unnecessary and

wanton infliction of pain" proscribed by the Eighth Amendment.  Estelle v. Gamble, 429

U.S. 97, 104-05 (1976);  Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir.2001).

## A. Exhaustion of Administrative Remedies

As an initial matter, the defendants maintain that Mr. Dotson has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), which requires:

> No action shall be brought with respect to prison conditions under § 1979 of the revised statutes of the United States (42 U.S.C. § 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997 e(a).  Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints.  While exhaustion is mandatory under the PLRA, Porter v. Nussle, 534 U.S. 516, 524 (2002), the defendant must raise lack of exhaustion as an affirmative defense. Federal Rule of Civil Procedure 8(a);   Jones v. Bock, 127 S.Ct. 910, 915, 75 USLW 4058 (U.S. Jan 22, 2007) (overruling Sixth Circuit precedent and finding inmate's failure to exhaust under PLRA an affirmative defense, i.e. inmate is not required to specially plead or demonstrate exhaustion in his or her complaint).  Here, the defendants have raised Mr. Dotson's lack of exhaustion.  To oppose the defendants' claim of failure to exhaust, the inmate must show that all available administrative remedies have been exhausted and should attach documentation to the complaint indicating the administrative disposition of any grievance filed.

Under the Ohio Administrative Code § 5120-9-31, the following three-step grievance procedure is available for an inmate complaining about "policies, procedures, conditions of confinement, or the actions of institutional staff:"\ (1) file an informal complaint to the direct supervisor of the staff member, or department most directly

- 8 -

responsible for the particular subject matter of the complaint; (2) file a notification of grievance to the inspector of institutional service; and (3) file an appeal of the disposition of grievance to the office of the chief inspector."  Ohio Admin. Code § 5120-9-31(J) (2003).

Mr. Dotson has submitted proof of administrative exhaustion with regard to his complaint requesting immediate medical attention and alleging refusal to treat his Hepatitis-\ C condition.  Of the named defendants in Mr. Dotson's suit, only Nurse Cain is mentioned in the filed grievances.  However, the United States Supreme Court has determined such a discrepancy does not necessarily represent a failure to exhaust. The three step grievance process detailed in Ohio Administrative Code § 5120-9-31, does not specifically require an inmate to name someone in the grievance.  Ohio Admin. Code §§ 5120-9-31(A) and (J).  Pursuant to the recent decision in Jones, to exhaust his administrative remedies does not necessarily require Mr. Dotson to have mentioned, in his grievance, the later named defendants in his claim.[3]

Mr. Dotson sufficiently followed the three-step grievance procedure.  On 5 December 2003 and 27 September 2004, Mr. Dotson submitted Informal Complaint Resolution forms to Nurse Cain, who responded on 12 December 2003 and 15 October 2004, respectively.  On 16 December 2003, Mr. Dotson filed a Notification of Grievance with the Institution's Inspector, who responded at length to the plaintiff's claims on

---

[3]As the United States Supreme Court indicated in Jones, exhaustion is not per se inadequate under the PLRA when an individual later sued was not named in the grievance.  In Jones, the Court determined the Michigan state procedural rules governing the prison grievance process determined whether an inmate had properly exhausted his or her administrative remedies. Where, as in Ohio, the Michigan regulations did not specifically require an inmate to name anyone in the grievance, the Courts were unwarranted in imposing as a prerequisite to proper exhaustion that only those named in an inmates prior grievance were properly before the Court in a later action.

30 December 2003.  On 8 January 2004, Mr. Dotson appealed his grievance to the Office of the Chief Inspector, which provided Mr. Dotson a response on 16 January 2004 confirming the treatment received by the plaintiff from a licensed medical physician.  The Office of Chief Inspector referred the matter to the Office of Correctional Healthcare for further review and response.  (Docket No. 12, Exhibit 1, pp. 1-8).  Mr. Dotson's 16 December 2003 grievance forms the basis for the current matter.  Pursuant to the broader reading afforded the PLRA exhaustion requirements, as enunciated in Jones, Mr. Dotson has exhausted his administrative options and this Court may address the merits of his claim.

### B. Claims Against Defendants in Their Individual Capacities

#### 1. Claims against ODRC Director Wilkinson and Medical Director Martin

To state a claim against a defendant in his individual capacity, plaintiff must allege personal involvement of the defendant in causing plaintiff's injury.  Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992).  A party cannot be held liable under Section 1983 unless the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  Leach v. Shelby Co. Sheriff, 891 F.2d 1241, 1246 (6th Cir.1989). To establish liability under Section 1983 against an individual defendant, a plaintiff must plead and prove that the defendant was personally involved in the conduct that forms the basis of his complaint.  Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999); Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.1984) (stating that, "[a]t a minimum a 1983 plaintiff must show that a supervisory official at least implicitly

authorized, approved, or knowingly acquiesced in the unconstitutional conduct").  Thus, a claimed constitutional violation must be based on active unconstitutional behavior, Greene, 310 F.3d at 899; Shehee, 199 F.3d at 300, and cannot be based upon the mere right to control employees.  Polk Co. v. Dodson, 454 U.S. 312, 325-26 (1981); Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658 (1978).  A plaintiff must demonstrate that a supervisory defendant "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on."  Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir.1999).  Supervisory liability cannot be based upon the failure to act, Summer v. Leis, 368 F.3d 881, 888 (6th Cir.2004), or simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  See Shehee, 199 F.3d at 300.  Merely bringing a problem to the attention of a supervisory official is not sufficient to impose liability.  See Shelly v. Johnson, 684 F.Supp. 941, 946 (W.D.Mich.1987).

Mr. Dotson fails to allege sufficient facts demonstrating that Director Wilkinson and Dr. Martin were personally involved in any adverse decision specifically taken against him.  As such, the plaintiff fails to give rise to a reasonable inference that defendants Wilkinson and Martin were actively engaged in any unconstitutional behavior.

Mr. Dotson does not allege personal involvement of Director Wilkinson or Dr. Martin in his specific treatment requests pertinent to his November 2003, Hepatitis C diagnosis.  Instead, Mr. Dotson alleges Director Wilkinson "has final policymaking authority" and Dr. Martin did "adopt and implement" the policy regarding testing, treatment, education, and immunization for all "inmates incarcerated."  (Docket Nos. 1,

12).  The plaintiff further alleges that Director Wilkinson "has implemented or

promulgated rules and policies" that caused him harm.[4]

Accordingly, Mr. Dotson's claims against Director Wilkinson and Dr. Martin arise

for actions undertaken in their official capacities.  Mr. Dotson's bald assertions to the

contrary, that defendants "adopted and implemented" policy does not state a claim

against Director Wilkinson or Dr. Martin in their individual capacities.  Therefore, the §

1983 claim against defendants Wilkinson and Martin in their individual capacities will be

dismissed.

## 2.  Eighth Amendment Claims

To establish a violation of his constitutional rights resulting from a denial of

adequate medical care, the plaintiff must show that the defendants were deliberately

indifferent to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976);

Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir1994).  "Deliberate indifference" is the

reckless disregard of a substantial risk of serious harm; mere negligence, or even gross

negligence, will not suffice.  Farmer v. Brennan, 511 U.S. 825, 835-36 (1994); Williams

v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) ( en banc );  Westlake v. Lucas, 537 F.2d

---

[4]Mr. Dotson does not delineate which policies or rules create the complained of harm.  It is clear from the exhaustion evidence that inmates are required to possess 18 to 24 months for the actual treatment program, that treatment itself takes between 6 and 12 months, and prior to the treatment the inmate is required to go through 6 to 12 months of appointments, scheduling, biopsy, and approval from Dr. Martin, the Chief Medical Director for the Department of Rehabilitation and Corrections.
    The evidence also indicates a specific set of fixed and objective criteria which serve to exclude an inmate from the treatment program such as: history of coronary artery disease; hemoglobin less than 12mg/dl; uncontrolled seizures; end stage renal disease or serum creatine greater than 1.5mg/dl; uncontrolled diabetes; WBC less than 3000/ul; platelet count less than 75,000/ul; uncontrolled hypertension; history of auto-immune disease; history of solid organ transplant; history of major depression or psychosis; history of malignancy.
    In this instance, the evidence indicates that Mr. Dotson's high blood pressure and high creatinine levels continue to exclude him from the treatment program.

857, 860-61 n. 5 (6th Cir.1976).  Under <u>Farmer</u>, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Id</u>. at 837.

An Eighth Amendment claim of denial of adequate medical care has both an objective and subjective component. The objective component requires that the plaintiff's medical needs were sufficiently serious.  <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981); <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir.1992).  The subjective component requires that the defendants were deliberately indifferent to the plaintiff's medical needs.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991); <u>Hunt</u>, 974 F.2d at 735. However, complaints of malpractice or allegations of negligence are insufficient to entitle a plaintiff to relief.  <u>Estelle v. Gamble</u>, 429 U.S. at 105-06.  Moreover, a prisoner's difference of opinion regarding diagnosis or treatment does not rise to the level of an Eighth Amendment violation.  <u>Id</u> at 107.

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  <u>Sanderfer</u>, 62 F.3d at 154-55; <u>Ward v. Smith</u>, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct.29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. <u>Gabehart v. Chapleau</u>, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr.4, 1997). Finally, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law.  <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n. 5 (6 Cir.1976).

The defendants assume for the sake of argument that Mr. Dotson's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment. The Court will adopt that assumption.  The issue, rather, is whether defendants Wilkinson, Martin and Cain were deliberately indifferent to that serious medical need.

Under the above standards, Mr. Dotson's complaint and amended complaint do not state a claim for medical mistreatment violative of his Eighth Amendment rights. While the Court does not minimize Mr. Dotson's ailments or pains, under well-settled law, he does not present sufficient factual allegations from which the Court could draw warranted inferences that the defendants were deliberately indifferent to his serious medical need.  See, e.g., Farmer, 511 U.S. at 837.  The plaintiff acknowledges that from the time of his diagnosis the defendants have addressed his medical complaints. Rather, Mr. Dotson contends the defendants' actions delayed medical care, or served to prevent the treatment he preferred in the time frame he preferred.  The medical records and grievance procedures Mr. Dotson attaches to his amended complaint show he has received the appropriate treatment for his condition within the medical protocols established for treatment of Hepatitis C, given Mr. Dotson's high blood pressure and elevated creatinine levels. The delay in placing the plaintiff in the Hepatitis C treatment program does not "constitute an unnecessary and wanton infliction of pain," nor is it "repugnant to the conscience of mankind."  See, e.g., Estelle, 429 U.S. at 105-06.

Further, Mr. Dotson complains the defendants were negligent in diagnosing and treating his Hepatitis C.  These complaints sound in medical malpractice and do not rise to the level of an Eighth Amendment violation. See, e.g., Id. at 105-06.  Mr. Dotson's difference in opinion with prison medical personnel regarding the appropriate diagnoses

- 14 -

and treatment for his Hepatitis C are not enough to state a deliberate indifference claim.

See, e.g., Sanderfer, 62 F.3d at 154-55.  Because the plaintiff received medical

attention, and his dispute is over the timing and adequacy of that treatment, the Court

will not second-guess medical judgments or constitutionalize these state tort claims.

See, e.g., Westlake, 537 F.2d at 860 n. 5;  Brock, 2001 WL 468169, at *2.

Accepting all the complaint's factual allegations as true, and construing the

complaint in the light most favorable to Mr. Dotson, the Court determines that

Mr. Dotson cannot show the defendants were deliberately indifferent to his medical

needs.  The "deliberate indifference" requirement is "meant to prevent the

constitutionalization of medical malpractice claims."  Comstock, 273 F.3d at 703.  As

stated by the Supreme Court, "an inadvertent failure to provide adequate medical care

cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind.'"  Estelle, 429 U.S. at 105-06.  Furthermore,

"[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a

prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but

merely a degree of incompetence which does not rise to the level of a constitutional

violation."  Comstock, 273 F.3d at 703.  Deliberate indifference "is the equivalent of

recklessly disregarding the risk."  Farmer, 511 U.S. at 836.  It is such indifference that

"offend[s] 'evolving standards of decency.'"  Estelle, 429 U.S. at 106.

None of the defendants' actions, as alleged in either the original complaint or its

amended version, rose to the level of "offend[ing] 'evolving standards of decency.'"  Id.

Registered Nurse Cain promptly responded to Mr. Dotson's informal complaint of

5 December 2003.  He explained to Mr. Dotson that the diagnosis of Hepatitis C came

- 15 -

about on 14 November 2003 and that the inmate would be placed in the Hepatitis C "clinic and followed according to screening guidelines."  Nurse Cain further responded to Mr. Dotson's 27 September 2004 informal complaint that he had not been placed in the Hepatitis C program by explaining to the plaintiff that his current high blood pressure and creatinine levels excluded him from candidacy.

The record is also clear that Dr. Dennison, not named in the instant matter, informed Mr. Dotson of his condition on 19 November 2003 and discussed the matter again on 21 November 2003.  In addition, Registered Nurse Lewis, not named in the instant matter, saw Mr. Dotson on 9 December 2003 and referred the inmate to Dr. Williams who confirmed the plaintiff would be placed on a waiting list for Chronic Care. The record indicates Mr. Dotson was examined for reported abdominal pain but no swelling was found in the area.  Based on these alleged facts, Mr. Dotson cannot show that Dr. Martin or Registered Nurse Cain were deliberately indifferent to his medical needs.

Mr. Dotson, further, contends the defendants may not avail themselves of qualified immunity in this instance.  The Court disagrees.  "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir.2003).  Generally, prison officials may rely on the doctrine of qualified immunity to protect them from liability for civil damages.  See Harlow v. Fitzgerald, 457 U.S. at 818.

- 16 -

The qualified immunity analysis involves the Court in a two-step inquiry. The Court must first determine whether the plaintiff has alleged a violation of a constitutional right and next determine whether that constitutional right was clearly established at the time the officials acted. See Turner v. Scott, 119 F.3d 425, 429 (6th Cir.1997). The United States Supreme Court, however, has held that the analysis is satisfied if it appears that the plaintiff has failed to demonstrate a constitutional violation in the first instance. Siegert v. Gilley, 500 U.S. 226, 232 (1991).; see also Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir.2004).

This is such a case. The Court need not proceed any further than the threshold inquiry of the qualified immunity analysis where Mr. Dotson has not demonstrated a constitutional violation. In an instance, such as this, where an inmate has received medical attention following a diagnosis of Hepatitis C, but has been unable to enter a treatment program due to objectively maintained exclusionary factors such as high blood pressure and elevated creatinine levels, no constitutional right has been violated. As a threshold matter, Mr. Dotson has failed to show a violation of any clearly established federal right. Accordingly, defendants are entitled to qualified immunity.

Therefore, Mr. Dotson's § 1983 claims against defendants Wilkinson, Martin and Cain in their individual capacities for an alleged Eighth Amendment violation will be dismissed.

### 3. Fourteenth Amendment Claim

#### a. Due Process

Any Fourteenth Amendment due process claim for denial of medical treatment by Mr. Dotson, a post-conviction prisoner, is redundant to his Eighth Amendment claim. As

- 17 -

Circuits have recognized, a pretrial detainee's claim for lack of medical care is properly brought under the Fourteenth Amendment but analyzed under the same Eighth Amendment standards. See Higgins v. Correctional Med. Srvs. of Ill., Inc., 178 F.3d 508, (7th Cir.1999); Bond v. Gales, 2004 WL 2806024 (W.D.Tenn. Apr. 22, 2004); see also Sinclair v. City of Birmingham, 2005 WL 2448864 (E.D.Mich. Oct. 3, 2005) ("It is an open question in the Sixth Circuit as to whether a denial of medical care claim by an arrestee is to be analyzed under the Fourth Amendment standard of objective reasonableness or the Eighth/Fourteenth Amendment standard of 'deliberate indifference.'"). Under the Fourteenth Amendment denial of due process clause, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners. See Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6 Cir.2001).

Where, as here, the plaintiff is not a pretrial detainee, but a convicted prisoner, the Courts recognize the Eighth Amendment as "the primary source of substantive protection" Graham v. Connor, 490 U.S. 386, 395, fn. 10, where the right to adequate medical treatment is challenged as an affront to substantive due process. See Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir.2001); Weaver v. Shadoan, 340 F.3d 398, 410 (6th Cir.2003) ("The Eighth Amendment does not apply to pretrial detainees"); see Graham v. Connor, 490 U.S. at 395, fn. 10 (noting that any protection afforded by the Fourteenth Amendment substantive due process to convicted prisoners against excessive force is "at best redundant of that provided by the Eighth Amendment").

**b.  Equal Protection**

In order to state an equal protection claim based on discriminatory acts, as the Court construes Mr. Dotson to have alleged, a Section 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of his membership in a protected class.  See Henry v. Metro. Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990). Moreover, conclusory allegations of unconstitutional conduct are insufficient to state a claim under Section 1983 – some factual basis for the claim must be set forth in the pleadings.  Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 726 (6th Cir.1996).

The Sixth Circuit holds that prisoners are not a "protected class" for equal protection purposes.  See Hampton v. Hobbs, 106 F.3d 1281, 1286 (6th Cir.1997). Here, as much as the Court can construe, Mr. Dotson bases his equal protection claim on his status as a prisoner with a positive diagnosis of Hepatitis C and compares his treatment for that disease to that of other prisoners and non-prisoners who have received liver biopsies and medication.  In Carnes v. Engler, 76 Fed. Appx. 79 (6th Cir. 2003), the Sixth Circuit denied the plaintiffs' equal protection claim, finding that no protected class had been alleged where the claim was based upon the alleged disparate treatment of certain prisoners as compared to others.  Id. at 81.

Because Mr. Dotson does not allege any facts indicating that the defendants intentionally discriminated against him on the basis of his membership in a protected class, his Fourteenth Amendment equal protection claim, as construed by this Court, will be dismissed.

## C. Claims Against Defendants in Their Official Capacities

Suing a government official in his or her official capacity is the equivalent of naming the government entity itself as the defendant.  Courts have long recognized that suits against state officials in their official capacity are treated as suits against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991); see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978) ("Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").  With limited exceptions that are not relevant to the instant case, "the Eleventh Amendment prohibits a citizen from filing suit against a state in federal court."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  Further, the Eleventh Amendment protects state officials sued for money damages in their official capacities.  See Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (holding that state officials, sued for monetary relief in their official capacities, are not "persons" subject to suit under section 1983);  Brandon v. Holt, 469 U.S. 464, 471-72 (1985);  Papp v. Snyder, 81 F. Supp.2d 852, 857 n.4 (N.D. Ohio 2000).  Consequently, the Eleventh Amendment bars Mr. Dotson's claims against all defendants in their official capacities, to the extent those claims seek monetary damages.

Furthermore, to state a § 1983 claim against a government entity, a plaintiff must allege that his injury was caused by an unconstitutional policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entity's officers. Monell, 436 U.S. at 690.  Even though Mr. Dotson has alleged that the state officials implemented or promulgated rules and policies that deprived him of proper treatment for Hepatitis C, the facts stated in the complaint do not support such a conclusion.

- 20 -

Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998) ("the Court need not accept as true legal conclusions or unwarranted factual inferences").

### IV.  Conspiracy

Although not included in his initial list of claims, Mr. Dotson's reference to "conspiracy" among the defendants fails to state a claim.  (Complaint ¶¶ 81-87). Plaintiff alleges a "conspiracy" among the defendants and "others" for which he provides no factual support whatsoever.  To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir.2003); Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th  Cir.1987);  Smith v. Rose, 760 F.2d 102, 106 (6th Cir.1985).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right.  Lepley v. Dresser, 681 F.Supp. 418, 422 (W.D.Mich.1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim."  Hartsfield v. Mayer, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  To the extent Mr. Dotson asserts a state-law conspiracy claim, this Court will decline to exercise jurisdiction.  See Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir.1995); Sweeten v. Brown, 27 F.3d 1162, 1166 (6th Cir.1994).

### V.  Jurisdiction on State Law Claims

Mr. Dotson asserts state law claims of medical malpractice, negligence and gross negligence.  Section 1983 does not provide redress for violations of state law.

Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir.1995);  Sweeten v. Brown, 27 F.3d at 1166.  To the extent that Mr. Dotson's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances.  See Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir.1993);  Hawley v. Burke, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998).  Accordingly, Mr. Dotson's state claims will be dismissed without prejudice.

Further, to the extent that Mr. Dotson is claiming his state law rights were violated, this Court will refuse to exercise pendent jurisdiction over such claims.  Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration.  In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed.  United Mine Workers v. Gibbs, 383 U.S. 715, 726-727 (1966); Moon v. Harrison Piping Supply, et al., 465 F.3d 719, 728 (6th Cir.2006); Smith v. Freland, 954 F.2d 343, 348 (6th Cir.), cert. denied, 504 U.S. 915 (1992).

**VI. CONCLUSION**

For the reasons stated, the defendants' motion to dismiss is granted.

Mr. Dotson's § 1983 claims against defendants Director Wilkinson, Dr. Martin, and

Nurse Cain are dismissed with prejudice.  Mr. Dotson's state law claims are dismissed

without prejudice.


IT IS SO ORDERED.

　　　　　　　　　　　　　　　　　　___/s/Lesley Wells_____
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated: <u>9 March 2007</u>

- 23 -